United States District Court
Southern District of Texas
**ENTERED**
April 15, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| VS. § | CRIMINAL NO. 4:07-CR-37-11 |
| § | |
| ALBERT ORTIZ § | |

## MEMORANDUM AND ORDER

Albert Ortiz filed a motion for compassionate release and the government responded to the motion. Based on Ortiz' motion, the government's response, all the arguments and authorities submitted by the parties, and the relevant record, Ortiz' motion is denied. The reasons for this decision are set forth below.

**I.   Background**

On March 24, 2009, Ortiz pled guilty to participating in a RICO conspiracy. He was 55 years old at the time.

Ortiz was a high-ranking member of the Houston Chapter of the Texas Syndicate gang. In that capacity, he issued an order to murder Mike Chavez. Presentence Investigation Report (Doc. # 641) at 8-9. He also ordered gang members to "take out" members of the Tango Blast gang, resulting in an attempted murder, and he ordered at least one other murder. *Id.* at 10-11. The participants in the conspiracy also conspired to commit various robberies and drug distribution offenses. *Id.* at 3- 4.

Ortiz has a criminal history dating to his teens, which includes theft, burglary, and drug and weapons crimes. *Id.* at 16-22. He has spent a significant portion of his adult life in prison. At

the time he participated in the RICO conspiracy, Ortiz was on parole for delivery of heroin and delivery of cocaine. *Id.* at 21.

On December 21, 2009, this Court sentenced Ortiz to a 240-month term of imprisonment, to run concurrently with a sentence he was already serving on a state charge. Ortiz had been temporarily in federal custody pursuant to a writ of habeas corpus *ad prosequendum*, and was returned to Texas custody to complete his state sentence after he was sentenced in this case. The Federal Bureau of Prisons determined that Ortiz' federal sentence began to run on the date he was sentenced – December 21, 2009.

## II.  Compassionate Release

Title 18, section 3582(c)(1)(A) of the United States Code as amended by the First Step Act allows a sentencing court to modify a sentence on a motion by the defendant if the defendant demonstrates extraordinary and compelling reasons warranting early release. The United States Sentencing Commission issued a policy statement, found at U.S.S.G. § 1B1.13, defining "extraordinary and compelling reasons" as certain medical conditions, including terminal illness, the age of the movant if he is at least 65 years old and certain other conditions are present, and certain enumerated family circumstances. Under the First Step Act, courts considering motions for compassionate release brought by a defendant are not bound, but may be informed, by the policy statement. *See United States v. Shkambi*, 993 F.3d 388 (5th Cir. 2021).

### A.  Covid-19

Ortiz first argues that he should be released due to the Covid-19 pandemic and the unique difficulties of maintaining safety precautions, such as social distancing, in prison. Ortiz also notes that he has several characteristics that put him at higher risk, including his age (68), his weight, and hypertension.

.	It is true that there has been a significantly higher rate of Covid-19 infection in prisons than in the general population, and that prison conditions make it more difficult to maintain social distancing.  In addition, the CDC has stated that hypertension may make an individual more susceptible to infection and serious illness from Covid.

The government, however, submits evidence that Ortiz has been vaccinated against Covid-19.  *See* Exhibit B to Government's Response (Doc. # 813).  The Court takes judicial notice that statistics published by the CDC show that vaccinated individuals have a substantially lower risk of serious illness or death from Covid than do unvaccinated individuals.  *See*, *e.g.*, https://www.cdc.gov/mmwr/volumes/71/wr/mm7104e2.htm#T2_down.  The government also notes that Ortiz's underlying conditions do not interfere with his ability to care for himself or engage in normal activities of daily living, suggesting that these conditions are being managed adequately.

Under similar facts, other courts have found that the Covid-19 pandemic, even when coupled with underlying health conditions, does not constitute extraordinary and compelling reason for compassionate release when those conditions are managed and the inmate has been offered a vaccine.

> This Court agrees with the vast majority of other courts who have ruled, on the basis of present understanding, that the highly effective available vaccines dramatically affect whether an inmate's medical conditions constitute the "extraordinary and compelling reason" required to further consider compassionate release. *See, e.g.*, *United States v. Gomez-Vega*, Cr. No. 19-1382-001 KG, 2021 WL 1339394, at *3 (D.N.M. Apr. 9, 2021) ("[A]bsent any evidence or argument combatting the efficacy of the vaccine's protection to mitigate his medical concerns, the Court is strained to accept that Mr. Gomez-Vega's conditions constitute extraordinary and compelling reasons for compassionate release."); *United States v. Leach*, Cr. No. 3:14-cr-229-MOC-DCK-10, 2021 WL 1318318, at *3 (W.D.N.C. Apr. 8, 2021) ("Defendant therefore can demonstrate

an extraordinary and compelling reason as required by § 3582(c)(1)(A)(i), but the facts that support it are likely to soon change once she is vaccinated."); *United States v. Mendoza*, Cr. No. 06-167, 2021 WL 1312920, at *8 (W. D. Pa. April 8, 2021) ("While there are certainly still unknowns about the vaccine administered to Mendoza, it appears that Mendoza's risks of (1) being reinfected by COVID-19, and (2) suffering severe illness if he is reinfected, are speculative because of his vaccination and his initial bout with COVID-19 in May 2020."); *United States v. Singh*, No. 4:15-CR-00028-11, 2021 WL 928740, at *2 (M.D. Pa. Mar. 11, 2021) (concluding that recent vaccination mitigated the inmate's risk such that COVID-19, despite the inmate's underlying conditions, no longer presented an extraordinary and compelling reason to grant compassionate release). Clearly, there can be no bright-line rule that a vaccinated individual is no longer at compellingly elevated risk, but in most instances, the risk of complications is dramatically reduced. Thus, while anything is possible, there is no articulable reason to believe that [Ortiz] will be a non-responder or will have a different reaction to the vaccine than the vast majority of its recipients, who develop significant antibody protection to the virus. On the present record, then, this Court concludes that [Ortiz]'s vaccination status removes his [underlying conditions] from the category of risk constituting an "extraordinary and compelling reason" to consider compassionate release.

*United States v. Harris*, No. CR SAG-05-61, 2021 WL 1516012, at *2 (D. Md. Apr. 16, 2021), *vacated on other grds.*, 2022 WL 636627 (4th Cir. Mar. 4, 2022).

Under the current circumstances, the Court finds that Covid-19 does not constitute extraordinary and compelling reasons to justify compassionate release: Ortiz' risk is substantially reduced by the fact that he is vaccinated, and his underlying conditions appear to be well-controlled. Ortiz can file a new motion if the evidence regarding the efficacy of vaccines changes, or if there is a change in his underlying health conditions that significantly elevates his risk from Covid, or that independently creates an extraordinary and compelling reason justifying relief.

### B. Caring for a Family Member

Ortiz also argues that the Court should grant him compassionate release so that he can care for his ailing 90-year-old mother. He acknowledges, however, that his mother is currently living with his sister. It is therefore not the case that Ortiz is the only family member who can care for his mother, and this argument fails to demonstrate a need for compassionate release.

### C. Sentence Calculation

Ortiz also asks the Court to order the Bureau of Prisons to credit him with approximately 40 months during which he was in federal custody under a writ of habeas corpus *ad prosequendum*. It is unclear whether Ortiz is arguing that he should be credited with this time because he was in federal custody, or because this Court ordered his federal sentence to run concurrent to the state sentence he was then serving. Neither argument is compelling.

Ortiz was serving a state sentence at the time. He was temporarily transferred to federal custody because his presence was required for federal court proceedings, but he was not serving a federal sentence at the time and the time he spent in federal custody was credited toward his state sentence. While Ortiz is correct that his state and federal sentences were to run concurrently, he was not under a federal sentence during the time in question. Ortiz acknowledges that the Bureau of Prisons began crediting his time from the day his federal sentence was imposed, even though he was subsequently returned to state custody. That is the correct calculation because there was no federal sentence to run concurrently with his state sentence before that date.

### Changes in Relevant Law

Ortiz also argues that there has been a trend away from harsh sentencing laws. While there is some truth to this claim, particularly with regard to drug-related crimes, Ortiz points to no

authority supporting his implicit claim that a 20-year sentence is unduly harsh for a RICO conspiracy that plotted several murders.

### III.    Conclusion And Order

For the foregoing reasons, Ortiz' motion for compassionate release (Doc. # 806) is DENIED.

SIGNED on April 14, 2022, at Houston, Texas.

Kenneth M. Hoyt
United States District Judge